817 So.2d 152 (2002)
Eileen GREGOR, et al.
v.
ARGENOT GREAT CENTRAL INSURANCE COMPANY, et al.
No. 2001-CA-1233.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 2002.
Opinion on Grant of Rehearing March 27, 2002.
Writ Granted June 21, 2002.
*154 Scott LaBarre, Gauthier, Downing, La-Barre, Beiser & Dean, Metairie, LA, Counsel for Plaintiff/Appellee.
Craig R. Nelson, Ward Nelson, L.L.C., New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY.
Judge MIRIAM G. WALTZER.
The State, Department of Health and Hospitals, appeals a judgment against it for damages for the wrongful death of Dan Gregor who died after eating raw oysters from a Louisiana restaurant. The restaurant failed to post warnings as required by the Sanitary Code at the "point of sale" and the state health inspectors did not require such postings.

STATEMENT OF FACTS AND HISTORY OF THE CASE
In 1991, DHH amended the Louisiana Sanitary Code, Chapter XXIII, 23:006-4 to require, in pertinent part,
All establishments that sell or serve raw oysters must display signs, menu notices, table tents, or other clearly visible messages at point of sale with the following wording:
THERE MAY BE A RISK ASSOCIATED WITH CONSUMING RAW SHELLFISH AS IS THE CASE WITH OTHER RAW PROTEIN PRODUCTS. IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER, STOMACH OR BLOOD OR HAVE OTHER IMMUNE DISORDERS, YOU SHOULD EAT THESE PRODUCTS FULLY COOKED.
In 1993, after fully disseminating the change, DHH began enforcement of the amendment.
During a visit to New Orleans on 15 August 1996, Gregor ate raw oysters at Pascal's Manale, a local seafood restaurant and oyster bar. The restaurant had posted the required warning behind the oyster bar. The restaurant had no other warnings. Gregor ordered and ate the raw oysters in the restaurant's dining room. Several weeks before his trip to New Orleans, Gregor was diagnosed with Hepatitis C. In the early morning hours of 16 August 1996, Gregor was admitted to the hospital. On 19 August 1996 Gregor lapsed into a coma and died on 25 August 1996 from vibrio vulnificus, a bacterium acquired from eating the raw oysters at Pascal's Manale.
Gregor's survivors sued the restaurant, the oyster fishermen and sellers and DHH.[1] All defendants, except DHH, settled. After a judge trial, the trial court found that DHH had negligently enforced the sanitary code and awarded damages for Gregor's wrongful death. The trial *155 court assessed 25 % fault to Pascal's Manale and the remaining fault to DHH. The trial court awarded damages totaling $600,000. DHH appeals arguing that the trial court erred in finding that DHH negligently enforced the sanitary code, in failing to find that enforcement of the code involved a discretionary function entitling DHH to immunity under LSA-R.S. 9:2798.1, in assessing fault and in awarding $600,000 in damages. Gregor answered the appeal arguing that the trial court erred by failing to award Gregor's survivors damages for his medical expenses.
FIRST ASSIGNMENT OF ERROR: The trial court erred in concluding that LSA-R.S. 9:2798.1 did not shield DHH from liability.[2]
DHH argues that the trial court erred in concluding that the state negligently enforced the sanitation code and that such enforcement did not involve a discretionary function entitling DHH to immunity under LSA-R.S. 9:2798.1. § 2798.1 provides in pertinent part,
Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
Instead of a traditional public duty doctrine in Louisiana, the legislature adopted LSA-R.S. 9:2798.1, exempting public entities from liability for their employees' discretionary or policy-making acts. However, where liability is based on a public entity's non-discretionary acts, liability will be judged under the traditional duty-risk analysis. For determining whether the discretionary function exception applies in specific fact situations, the court must first consider whether the government employee had an element of choice. The discretionary function exception will not apply when a statute, regulation or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no option but to adhere to the directive. If the employee has a choice as to appropriate conduct, there is no immunity. When discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is one grounded in social, economic or political policy. If the action is not based on public policy, the government is liable for any negligence, because the exception insulates the government from liability only if the challenged action involves the permissible exercise of a policy judgment. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, 613.
The Gregors complain that DHH's inspector failed to properly enforce the sanitation code's requirement of posted warnings about the dangers of eating raw oysters. The language of the Louisiana Sanitary Code, Chapter XXIII, 23:006-4 provides that establishments selling raw oysters "must" post this warning at the point of sale. Such mandatory language does not allow choice or discretion. The sanitary code requires a specific course of action, and thus the discretionary function exception does not apply.
DHH argues that the sanitary code allows discretion by its inspectors in determining the meaning of "point of sale." Although the code does not define this term, we do not believe such an omission *156 requires a finding that the discretionary function immunity applies.
DHH's employee who inspected Pascal's Manale testified that he did not consider the point of sale of the oysters. He testified that he believed that the warnings needed to be posted at each "establishment." He did not inquire about where Pascal's Manale sold oysters. During his inspections, he did not learn of the different points of sale. He also testified that DHH did not instruct him on the necessity of warnings at different points of sale. However, the state health officer responsible for the adoption of the warning requirement testified that the health inspectors should inquire and learn the different points of sale at the various establishments. We find no error in the trial court's finding that LSA-R.S. 9:2798.1 did not shield DHH from liability.
SECOND ASSIGNMENT OF ERROR: The trial court erred in assessing fault between the restaurant (25%) and DHH (75%).
The trial court apportioned fault between DHH and Pascal's Manale. The trial court found no evidence of Gregor's fault. DHH argues that the restaurant had superior knowledge and thus the trial court erred in apportioning only 25% fault to Pascal's Manale. The trier of fact is owed some deference in allocating fault, for the finding of percentages of fault and comparing fault pursuant to LSA-C.C. art. 2323. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), pp. 7-8, 666 So.2d 607, 610-11. In apportioning fault between tortfeasors, the capacities of the various actors is one factor to be considered. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). Moreover, one party's superior knowledge of a defect in the premises and the accompanying duty to warn have determined the appropriate apportionment of fault. Jones v. Peyton Place, Inc., 95-0574 (La.App. 4 Cir. 5/22/96), 675 So.2d 754. DHH argues for a misapplication of the principles of law. DHH argues that Pascal's Manale enjoyed a different, and in their view superior, posture than did DHH. Regarding the necessity and benefits of health warnings, DHH enjoys a far superior position than Pascal's Manale. DHH is in the business of protecting the health of the citizenry of Louisiana, whereas Pascal's Manale is in the business of selling oysters. We find no error in the trial court's apportionment of fault between the restaurant and DHH.
DHH argues that the trial court erred in failing to assess some fault to Gregor. Several weeks before his death in 1996, Gregor was diagnosed with Hepatitis C. DHH offered no evidence that Gregor knew of the risks associated with eating raw oysters to those people suffering from Hepatitis C. DHH relies upon an obscure journal article, published by Florida State University, for the proposition that these risks were widely known at the time by the general population[3]. The record contains no evidence that Gregor knew or should have known of the risks of eating raw oysters. We find no error in the trial court's finding Gregor free of fault.
THIRD ASSIGNMENT OF ERROR: The trial court erred in awarding damages totaling $600,000.
DHH argues that the trial court abused its discretion by awarding excessive damages for Gregor's survival action and his wrongful death. The trial court *157 awarded $50,000 in damages for Gregor's survival action and $550,000 in damages for his parents' wrongful death action. The standard of review of general damage awards requires great, even vast, deference to the trier of fact. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
Dan Gregor was a young man planning to be married. Although suffering from Hepatitis C, the record contains no evidence of a shortened life expectancy. He suffered a painful and demoralizing death. Slowly, each system of his body failed him. DHH argues that since he lapsed into a coma on his third day of hospitalization, his survival damages should be reduced. We are not convinced that survival damages should be discounted because the victim lapses into a coma. For three days, he suffered, and then lapsed into a coma and eventually died. We find no abuse of the trial court's discretion in awarding $50,000 for survival damages.
DHH argues that the trial court awarded excessive damages to Gregor's parents for his wrongful death, because Dan Gregor was a major at the time of his death and because his parents died after his death but before trial. Gregor enjoyed a close relationship with his parents. DHH offers no evidence to disprove this fact. To reduce the award would require that we substitute our opinion about the value of that parent/child relationship for the trial court's opinion. We cannot say that the amounts awarded to Gregor's father and mother, although generous, constituted an abuse of the trial court's vast discretion.
ANSWER TO APPEAL: Gregor answered the appeal arguing that the trial court erred in failing to award damages for medical expenses.
The parties stipulated to the amount of medical expenses, $70,176.21. The trial court did not award Gregor's survivors his medical expenses. Gregor's survivors failed to plead damages for his medical expenses. When items of special damages are claimed, they shall be specially alleged. LSA-C.C. art. 861. We find no error in the trial court's failure to award medical expenses, when the party fails to plead such special damages.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court.
AFFIRMED.

On Application for Rehearing
MIRIAM G. WALTZER, Judge.
We grant Gregor's application for rehearing to address an issue raised by his answer to the appeal. In his answer to the appeal, Gregor demanded that this court amend the trial court's judgment to award medical expenses. In his brief, Gregor argued only that the trial court erred by not awarding medical expenses, since the parties had stipulated to the amount of such expenses. However, he failed to address in his arguments to this court that he neglected to plead and demand special damages, including medical expenses, in his petition. However, on rehearing, he has addressed adequately the issue of concern to this court in his brief. Because we feel that the demand has merit, we grant the application for rehearing and amend the judgment to award medical expenses totaling $70,176.21.
*158 Items of special damages must be specially alleged. LSA-C.C.P. art. 861. Medical expenses are special damages, as they can be fixed to a pecuniary certainty. Mistich v. Pipelines, Inc., 609 So.2d 921, 938 (La.App. 4 Cir.1992). Generally, a trial court may not award special damages which the plaintiff did not specifically plead. However, LSA C.C.P. art. 1154 provides the only exception to this general rule. Id.
LSA-C.C.P. art. 1154 provides in pertinent part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings." (Emphasis added.) If evidence was admissible for any purpose, such an admission could not serve to enlarge the pleadings without the express consent of the opposing party. Laper v. Board of Commissioners of the Port of New Orleans, 617 So.2d 505, 514.
DHH and Gregor agreed to certain stipulations, including "Dan Gregor incurred medical expenses in the amount of $70,176.21 as a result of the contraction of vibrio vulnificus." DHH stipulated to both the amount of Gregor's medical expenses and the element of causation. We do not decide whether a stipulation regarding the amount of medical expenses alone would sufficiently curtail the pleading requirement of LSA C.C.P. art. 861. By its stipulation, DHH expressly consented to the enlargement of the pleadings, allowing recovery for past medical expenses. For these reasons, we grant Gregor's application for rehearing and amend the judgment to award $70,126.21 in past medical expenses.
APPLICATION FOR REHEARING GRANTED, JUDGMENT AMENDED.
NOTES
[1] Gregor's survivors sued the State, through the Department of Wildlife and Fisheries but dismissed all claims against DWF.
[2] On appeal, DHH argues that it is entitled to absolute immunity. However, DHH fails to cite any authority for such a proposition. This argument is a veiled attempt to apply the qualified immunity adopted in LSA-R.S. 9:2798.1.
[3] DHH has attached a copy of this article from the university's web site. Gregor's survivors filed a motion to strike this evidence on appeal. We grant this motion because the evidence is not part of the record from the trial court.